IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NAMJOT SINGH,

    Petitioner,

v.                                           No. 1:26-cv-00235-DHU-GJF

JAMIE RAYE CARNES, Warden of
Torrance County Detention Center;
MARISA FLORES, El Paso Field Office
Director for U.S. Immigration and Customs
Enforcement; and KRISTI NOEM, Secretary
of the Department of Homeland Security,

    Respondents.

## ORDER GRANTING HABEAS PETITION

This matter comes before the Court on Petitioner Namjot Singh's Petition for Writ of Habeas Corpus ("Petition"). Doc. 1. Petitioner is currently in immigration detention and alleges that he was unlawfully re-detained after previously being released, in violation of his due process rights and the Immigration and Nationality Act ("INA"). *Id.* at ¶¶ 91-99. The Petition asks the Court to declare Petitioner's detention unlawful and to grant a writ of habeas corpus ordering Respondents to immediately release Petitioner, or, in the alternative, to order a bond hearing within seven days. *Id.* at 29-30. Having considered the parties' briefs and the relevant and applicable law, the Court finds that the Petition should be **GRANTED**.[1]

---

[1] Petitioner also filed a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction in this matter. Doc. 9. Because this Order grants the relief requested in both the Petition and the Motion, the Court **DENIES** Petitioner's Motion for TRO as moot.

1

# I.
# BACKGROUND

Petitioner Namjot Singh is a native of India who entered the United States without inspection on or around March 19, 2022. Doc. 1 at ¶ 22. He was arrested shortly after arriving and was placed into removal proceedings, as "an alien present in the United States who has not been admitted or paroled." *Id.* (citing Doc. 1-2). Petitioner was then released on his own recognizance after a determination that he was neither a flight risk nor a danger. *Id.* at ¶ 23 (citing Doc. 1-1). On December 18, 2025, Petitioner was arrested in Texas while driving his truck. *Id.* at ¶ 24. He was taken into ICE custody and eventually transferred to the Torrance County Detention Facility, where he remains detained today. *Id.*

On February 3, 2026, Petitioner filed a Petition for Writ of Habeas Corpus. In the Petition, Mr. Singh contends that his mandatory detention under 8 U.S.C. § 1225 is unlawful. *Id.* at ¶¶ 41, 51, 66. Instead, he argues, he should be entitled to a bond hearing under § 1226(a), *id.* at ¶ 66, and the Government's failure to provide him one violates the INA and his due process rights, *id.* at 67-79. Further, because of his previous release, Petitioner argues that Respondents' failure to provide Petitioner with a pre-deprivation hearing provides an additional, independent basis for this Court to order immediate release. *Id.* at ¶¶ 80-90. The Petition asks this Court to:

(1) Assume jurisdiction over this matter;

(2) Enjoin Petitioner's removal outside the District of New Mexico pending resolution of this matter;

(3) Issue an Order to Show Cause ordering Respondents to show cause why the Petition should not be granted;

(4) Issue a Writ of Habeas Corpus requiring that Respondents immediately release Petitioner subject to the same terms as his original Order of Release on Recognizance;

(5) In the alternative, issue a writ of habeas corpus requiring Petitioner's immediate release unless Respondents provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days;

(6) Enjoin Respondents from imposing any conditions of release, including but not limited to a GPS ankle monitor, unless approved by an immigration judge at the bond hearing;

(7) Enjoin Respondents from re-detaining Petitioner without first affording him a pre-deprivation hearing before a neutral decisionmaker;

(8) Declare that Petitioner's detention violates the INA and the Due Process Clause of the Fifth Amendment; and

(9) Grant any other and further relief that this Court deems just and proper.

*Id.* at 29-30.

On February 5, 2026, this Court issued an Order to Show Cause, requiring Respondents to respond to the Petition within ten business days of service. The Government timely responded on February 17, 2026. *See* Doc. 6. In the Response, the Government does not dispute the facts alleged by Petitioner. *Id.* Relying on the BIA's decision in *Matter of Yajure Hurtado*, Respondents' position is that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) because he was present in the United States without being admitted or paroled. *Id.* at 2. However, Respondents also acknowledge that this Court reached the opposite conclusion in *Requejo Roman v. Castro*, Case No. 2:25-cv-01076. *Id.* at 2. And the Government concedes that the facts of this case "are not

3

materially distinguishable [from *Requejo Roman*] for purposes of the Court's decision on the legal issue of which statutory provision authorizes Petitioner's detention." *Id.* The Government did not address the argument that Petitioner is entitled to release because of his previous release on his own recognizance.

Petitioner submitted a Reply the same day, reiterating his request that the Court grant his Petition. Doc. 7. On February 26, 2026, Petitioner filed a Motion for Temporary Restraining Order and Preliminary Injunction. Doc. 9. Importantly, Petitioner points out that his immigration case is set for final hearing on March 6, 2026, which may moot the present Petition. *Id.* at 2.

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). Petitioner seeks habeas relief, arguing he is being unlawfully detained in violation of the INA, its implementing regulations, and his Fifth Amendment due process rights.

The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

## III.
## DISCUSSION

**A. Petitioner's re-detention without a pre-deprivation hearing violated his due process rights.**

Petitioner argues that the Due Process Clause of the Fifth Amendment bars Respondents from re-detaining him without first providing him with a pre-deprivation hearing. Doc. 1 at ¶¶ 80-90, 99. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. See *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

1. <u>Petitioner Possesses a Protected Liberty Interest.</u>

Turning to the first step—whether Petitioner possesses a protected liberty interest—this Court finds that Petitioner has a protected liberty interest in his release from immigration custody. Courts have resolved the issue of whether a conditional release rises to the level of a protected liberty interest by comparing the release in the case to the liberty interest in parole in *Morrissey v. Brewer*, 408 U.S. 471 (1972). See *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010). Like the parole discussed in *Morrissey*, Petitioner's release from immigration custody enabled "him to do a wide range of things," including to work, develop community ties, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. Indeed, Petitioner was released from immigration custody well over three years ago. Doc. 1 at ¶ 1. During this time, he worked lawfully to support himself and developed ties in his community. *Id.* at ¶¶ 1, 69, 73. These relationships and obligations are the very kind contemplated in *Morrissey* and demonstrate the liberty interest accrued by Petitioner during his more than three years on release.

2. <u>A Pre-Deprivation Hearing Was Required Before Petitioner Was Re-Detained.</u>

Having found that Petitioner possesses a protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. To make this determination, the Court considers the three factors outlined in *Mathews v. Eldridge*: 1) "the private interest that will be affected by the official action," 2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Turning to the first *Mathews* factor, the Court finds that Petitioner has a significant private interest in remaining free from detention after being released from immigration custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). As mentioned previously, Petitioner was out of immigration custody for over three years before being re-detained by ICE, during which time his interest in release grew even stronger as he worked and lived freely alongside family and other community members. His private interest in freedom from detention is therefore substantial. *See* Doc. 1 at ¶ 73 (collecting cases where courts have found the same).

With respect to the second *Mathews* factor, the Court also finds that the risk of erroneous deprivation in this case is considerable, particularly here where ICE previously released Petitioner and has not shown a change in circumstances or otherwise explained why re-detention is necessary. *See id.* at ¶ 77-78, 88. As Petitioner suggests, see id. at ¶¶ 84-85, a pre-deprivation hearing would

likely attenuate this risk, but Respondents provided no such hearing to Petitioner before re-detaining him.

Finally, the Court finds that the third *Mathews* factor favors Petitioner as well. Respondents' interest in placing Petitioner in detention absent some reason for doing so is low. And requiring a pre-deprivation hearing does not undermine the Government's interest in enforcing its immigration laws; it merely ensures its enforcement tactics comport with due process. Moreover, the effort and costs of providing Petitioner this simple procedural safeguard is minimal.

On balance, the Court finds that under the three *Mathews* factors, Petitioner should have received a pre-deprivation hearing prior to being re-detained.

**B. Petitioner's ongoing detention without a bond hearing is also unlawful.**

Given the Court's finding that due process requires Petitioner's release, the Court need not make a determination regarding Petitioner's detention authority and entitlement to a bond hearing. However, it is worth noting that, this case is not the first to raise this issue in this Court. In fact, as the Government acknowledges in its Response, Doc. 6, the Court has already considered the statutory and constitutional issues raised by Petitioner with regard to §§ 1225 and 1226. *See Requejo Roman v. Castro et al.*, --F.Supp.3d--, 2026 WL 125681 (D.N.M. 2026); *see also Velasquez Salazar v. Dedos et al.*, --F.Supp.3d--, 2025 WL 2676729 (D.N.M. 2025); *Vega Uribe v. Noem*, No. 2:25-cv-01139, 2026 WL 127621 (D.N.M. Jan. 16, 2026); *Mendoza Rivas v. Noem*, No. 2:25-cv-01311 (D.N.M. Feb. 2, 2026); *Garcia Sanchez v. Noem*, No. 2:25-cv-01293 (D.N.M. Feb. 5, 2026). Because the facts here are not materially different than those the Court analyzed in previous cases, *see* Doc. 6 at 2, the Court's conclusion is the same. Mr. Singh, who entered the United States without inspection over three years ago, was arrested inside the United States after entering, and was released on his own recognizance, is properly detained pursuant to 8 U.S.C. §

1226. For a detailed account of the Court's reasoning on this issue, see *Requejo Roman v. Castro et al.*.

### C. Immediate release is the appropriate remedy.

While Petitioner is entitled to a bond hearing while detained, such a remedy would not adequately address the most concerning violation present in this case—the Government's initial re-detention of Petitioner without due process of law. *See, e.g., E.A.T.-B. v. Wamsley*, 795 F.Supp.3d 1316, 1324 (W.D. Wash. 2025) ("[A] post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."). In its Response, the Government fails to address this aspect of Petitioner's claim and presents no arguments about the appropriate remedy in this case. *See* Doc. 6.

Several courts analyzing similar facts, including this one, have found that immediate release is the appropriate remedy when the Government's re-detention of someone violates their due process rights. *Wamsley*, 795 F.Supp.3d 1316 (holding that a noncitizen previously released on an order of recognizance had a liberty interest in his continued release, that the *Mathews* factors required a pre-deprivation hearing before any re-detention, and that the appropriate remedy was release); *Valdez v. Joyce*, 803 F.Supp.3d 213 (S.D.N.Y. 2025) (finding the same); *Garcia-Domingo v. Castro*, 806 F.Supp.3d 1246 (D.N.M. 2025) (at TRO stage, ordering immediate release of petitioner previously released by ORR and re-detained without a pre-deprivation hearing); *Alfaro Herrera v. Baltazar*, 2026 WL 91470, at *13 (D. Colo. Jan. 13, 2026) (finding release the appropriate remedy to remedy unlawful re-detention of noncitizen previously determined by ORR not to be a flight risk or danger); *Faizyan v. Casey*, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025) (finding, under *Mathews*, that revocation of Petitioner's release on recognizance without an opportunity to be heard deprived him of his due process rights, and ordering his immediate

release); *Chipantiza-Sisalema v. Francis*, 2025 WL 1927931, at *4 (S.D.N.Y. July 13, 2025) (granting noncitizen's request for immediate release when she was re-detained without notice or hearing after previous release on her own recognizance). This Court concludes the same and finds that the only adequate remedy for the due process violation here is Petitioner's immediate release.

## IV.
## CONCLUSION

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus is **GRANTED**.

**IT IS THEREFORE ORDERED** that Respondents release Petitioner within twenty-four hours of this Order and subject him to the same terms as his original Order of Release on Recognizance. Respondents are **RESTRAINED** from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing, that Petitioner is a danger to his community or a flight risk.

**IT IS FURTHER ORDERED** that the parties submit a joint status report to the Court no later than Thursday, March 5, 2026, confirming Petitioner's timely release.

**IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE